## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SHAUN M. HOGAN,
        Plaintiff,

        v.                                    Case No. 14-cv-00423 (VAB)

RAY MABUS, Secretary of
Department of the Navy
        Defendant.

## **RULING AND ORDER**

Plaintiff, Shaun Hogan, brings this employment action against Ray Mabus, Secretary of the Department of the Navy, in his official capacity ("Navy"), claiming sex discrimination[1] and retaliation against him under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and in his individual capacity under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). Defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). [Doc. No. 12] For the reasons hereinafter set forth, the motion to dismiss is GRANTED.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

The facts alleged in the complaint are accepted as true for the sole purpose of this ruling, as the applicable law requires.

Mr. Hogan, a civilian, worked as a Department of Defense Police Officer at Naval Submarine Base New London and applied for a canine handler position on December 7, 2011.

---

[1] While the Plaintiff checked the box on his Complaint form for discriminatory conduct based on religion, the Court interprets this as an inadvertent error and construes the Complaint as one for discrimination based on sex because the check box selected appears between "religion" and "sex" on the form and because there are only allegations in the Complaint regarding sex and none regarding religion.

On December 16, the Navy Human Resources Office informed him that he was found not qualified for the position.  After appealing this determination on December 17, he learned on December 19 that he was considered qualified and that his résumé had been forwarded to the selecting officials for consideration.  The next day, he learned that another candidate had been selected for the position.  Mr. Hogan soon learned that Master-at-Arms Second Class Denille Dresser, a female active duty canine handler, who had been planning to separate from the service and applied for this civilian position, had been selected.

On January 4, 2012, Mr. Hogan filed a complaint regarding this hiring decision with the Navy Inspector General, in the form of an e-mail dated January 4, 2015.  [Doc. No. 12-2].  In his email, Mr. Hogan described three "red flags" that made him "strongly suspect the selection process for this job was unfairly based upon undue bias or other interference or input."  Doc. No. 12-2, at 3.  First, in discussions with a supervisor and two of his fellow probationary police officers, "[i]t was subtly made clear . . . Denile [*sic*] had been predetermined to get the position by someone within the security department chain of command."  Doc. No. 12-2, at 1.  This conclusion had not been directly communicated to Mr. Hogan, but rather "it was very much left for [him] to 'read between the lines' as to what [he] was being told."  *Id.*

Second, when Mr. Hogan was initially found not qualified for the position, he contacted his base's human resources representative, who informed him that, according to the "selecting official," numerous qualified candidates had applied and Mr. Hogan had provided insufficient information about his past experience as a police officer in the "Specialized Experience" portion of the application.  Doc. No. 12-2, at 1.  She refused to provide Mr. Hogan the name of the selecting official, to whom he wished to appeal directly.  *Id.*  Mr. Hogan also had been told by one of his colleagues that "typically, when they already have someone in mind for a position, it

is not uncommon for them to provide a very small job opening window." *Id.* The job announcement was only posted for five days. *Id.* at 1-2. With such a short posting period, Mr. Hogan "found it hard to believe 'numerous' candidates had applied for such a specialized position." *Id.*

Third, shortly after Mr. Hogan appealed the determination that he was not qualified for the position, he received an email stating that based on the "clarifying information" he had provided, Mr. Hogan had been found qualified. Mr. Hogan believed that "it was very clear from the beginning that [he] was more than qualified for the job," and he "fail[ed] to see how any of the information provided in his [appeal] email added any clarifying information to [his] application package that was not already evident." Doc. No. 12-2, at 2. Mr. Hogan believed that finding him not qualified would have made it easier to "justify the selection of a lesser qualified person for the position (i.e. covering their tracks) - particularly in the event of . . . a disgruntled applicant making inquiries as I now am." *Id.*

In addition to describing these "red flags," Mr. Hogan stated in his complaint email that he does not know the person who got the job, nor "her education, training, or experience as a dog handler," and that "it is possible [she] answered her [application] questions the same" as he did. He concluded his complaint email by stating:

> I believe firmly that if someone in my chain of command committed misconduct in the selection process, they need to be exposed and dealt with appropriately. . . . **The job selection process should be fair with applicants provided an equal opportunity to have their qualifications judged based upon merit - not upon any sort of personal knowledge bias.** . . . I strongly suspect the selection process for this job was unfairly based upon undue bias or other interference or input. Too many 'red flags' – things that don't add up – lead me to believe not all was above board with this job selection. When taken together with anecdotal conversations I have had, it seems incredulous that the one applicant identified as predestined to get the job did in fact get it . . . . I wish to again emphasize I do not know Ms. Denile [*sic*] or have any animus toward her; if in fact her application

materials justify her selection as the best qualified applicant for this position, then
I only wish her the best.  However, I seriously question whether, *__based solely
upon the application materials__*, her application was the most qualified for the job.
My request to you sir would be simply to review the application materials and
determine if the selecting officials' selection can be justified based solely upon
the application received.  If after reviewing the materials you determine I or other
applicants may have been unfairly treated in the process, I would be interested in
pursuing whatever remediation is available to me.

Doc. 12-2, at 3.  Mr. Hogan's complaint was forwarded to various other Navy offices over the

following months.

On August 16, 2012, Mr. Hogan attended an unrelated anti-terrorism force protection

briefing.  The entire chain of command attended this event, but because there was no advance

notice that the chain of command would be present, more than one civilian in attendance,

including Mr. Hogan, dressed in casual attire.  Before the briefing started, Chief Petty Officer

Wayne Leite chastised Mr. Hogan for not being in uniform, even though Mr. Hogan was

scheduled to be off that morning.  During the event, the majority of the military members of the

department sat on one side of the auditorium and most of the civilian members sat on the other.

Following a complaint expressed by a civilian attendee, a second class master-at-arms, whom

Mr. Hogan did not recognize, stated essentially that there had been too much complaining about

work conditions.  It appeared to Mr. Hogan that this uniformed individual addressed his

comments in the direction of the civilian police officers.  Mr. Hogan interrupted the uniformed

individual and said that "you need to show us the respect we deserve."  The executive officer

conducting the session then interrupted Mr. Hogan, stating words to the effect that the session

needed to close and that this issue could be discussed at another time.  Mr. Hogan believed that

the executive officer appeared visibly annoyed.

On August 20, 2012, Mr. Hogan contacted a deputy director of regional security, Milton Hemmingsen, regarding the January hiring complaint because he had been informed in June by the local Inspector General's office that his case was more appropriate for referral to the Regional Security chain of command.  Mr. Hemmingsen initially informed Mr. Hogan that the Inspector General's office had found no violation, but after Mr. Hogan forwarded Mr. Hemmingsen his case file on the hiring, Mr. Hemmingsen responded on August 21 that he would look into it.

On August 24, 2012, Chief Leite summoned Mr. Hogan at the start of Mr. Hogan's shift that day.  Mr. Hogan had advance notice from his colleagues that he was potentially going to be fired.  Chief Leite gave Mr. Hogan a stack of papers at the top of which was a heading "Separation During the Probationary Period."  While Chief Leite did not provide an explanation for Mr. Hogan's separation, the stack of papers included a letter from Security Director Patricia Adams, citing inappropriate conduct as the reason for separation, specifically Mr. Hogan's disrespect at the August 16 event.

Mr. Hogan filed an official complaint, dated December 6, 2012, with the United States Equal Employment Opportunity Commission ("EEOC").  *See* Doc. No. 1, at 9-13.  The EEOC dismissed Mr. Hogan's EEOC complaint on January 23, 2013, on the grounds of "untimely EEO Counselor contact and/or failure to state a claim," and affirmed its decision on February 28, 2014.  *See id.*  Specifically, the EEOC found that Mr. Hogan's discrimination claim for the challenged hiring decision was not timely because: he "knew or reasonably should have suspected discrimination on January 4, 2012, when he admits he learned he was not selected but the female coworker was selected"; he "did not contact an EEO Counselor regarding the subject matter until August 30, 2012, which was beyond the 45-day time limit set by the regulations";

and he "fail[ed]to provide any adequate justification for his untimely EEO Counselor contact regarding [this] claim." *Id.* at 10.  The EEOC also found that his retaliatory termination claim was properly dismissed for failure to state a claim because "[t]here is no evidence that [he] raised any protected opposition to discrimination in [his complaint to the Navy Inspector General] or to the [EEOC] previously." *Id.*

Mr. Hogan timely commenced this litigation on April 3, 2014.

## II.     STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (citations omitted).  When deciding a Rule 12(b)(6) motion to dismiss, a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of

action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557 (2007).  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Despite the familiar burden-shifting paradigm laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), there is no heightened pleading requirement for Title VII cases. However, while "an employment discrimination plaintiff need not plead a *prima facie* case of discrimination . . . to survive [a] motion to dismiss," *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002), "a complaint must allege the essential elements of an employment discrimination claim—that [the] plaintiff suffered discrimination on the basis of protected status," *Gonzales v. Eagle Leasing Co.*, No. 3:13-CV-1565, 2014 WL 4794536, at *3, 2014 U.S. Dist. LEXIS 134913, at *8 (D. Conn. Sept. 25, 2014) (internal quotation marks and citations omitted).  In short, "to survive a motion to dismiss, a Title VII plaintiff's complaint must be facially plausible and allege sufficient facts to give the defendant fair notice of the basis for the claim." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 228-29 & n.10 (2d Cir. 2014).

## III.   DISCUSSION

### A.   TITLE VII HIRING DISCRIMINATION CLAIM

Mr. Hogan claims that the Navy failed to hire him for a civilian police canine handler position because of his sex in violation of Title VII.  Mr. Hogan, however, failed to exhaust his administrative remedies in time.  As a result, this claim must be dismissed.

"It has long been the rule that a Title VII plaintiff alleging that she [or he] was the victim of employment discrimination may not seek relief in a federal court until she [or he] timely

7

exhausts her administrative remedies before the U.S. Equal Employment Opportunity Commission ('EEOC')." *Hansen v. Jones Lang LaSalle Americas, Inc.*, ___ F. Supp. 3d. ____, 2015 WL 1927530, at *1, 2015 U.S. Dist. LEXIS 55551, at *1 (D. Conn. Apr. 28, 2015).  Under the applicable EEOC regulations, an aggrieved federal employee "must initiate contact with [an EEOC] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).  "The 45-day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred."  *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001).  The Second Circuit "has held that the limitations period begins to run when the plaintiff receives notice of the adverse action."  *Cetina v. Longworth*, 583 F. App'x 1, 3 (2d Cir. 2014) (citing *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 23 (2d Cir.1985).

Based on the allegations in the Complaint, the latest point at which Mr. Hogan could have had notice of his allegedly discriminatory nonselection for the canine handler position was January 4, 2012, the date on which he filed his complaint with the Navy Inspector General.  Mr. Hogan did not contact the EEOC regarding his nonselection until August 30, 2012, well beyond the applicable forty-five day period.  "The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past."  *Delaware State Coll. v. Ricks*, 449 U.S. 250, 256-57 (1980).

Plaintiff argues in the Objection to Defendant's Motion to Dismiss [Doc. No. 16] that Mr. Hogan "was informed to address his complaint to the Inspector General ("IG") by his commanding officer. . . .  It wasn't until after the IG replied that he was then informed that the

next step in the administrative process was to file an EEO complaint."  Doc. No. 16, at 1.
Plaintiff's counsel contends that this tolled the 45-day limitations period.  This contention fails
because of the absence of any allegations of facts to support it.  While the relevant regulations do
contain an exception to the 45-day rule that provides for an extension if the aggrieved
"individual shows that he or she was not notified of the time limits and was not otherwise aware
of them," 29 C.F.R. § 1614.105(a)(2), the objection to the motion to dismiss can point to no
averment in the Complaint nor to any supporting documentation that could possibly be construed
to support such an inference.  Moreover, Plaintiff has not identified any case law supporting the
position that the limitations period should have been tolled in this case.

Thus, the Court finds that Mr. Hogan's Title VII sex discrimination claim for the Navy's
hiring of another individual for the canine handler position is time-barred and dismisses this
claim.

### B.    *BIVENS* CLAIM

The Supreme Court in *Bivens* recognized an implied cause of action for damages against
individual federal agents arising out of their violation of certain constitutionally protected
interests.  403 U.S. 388.  "Although *Bivens* itself involved a violation of the Fourth Amendment,
. . . later cases extended the holding to provide relief for federal officials' violations of the Fifth
and Eighth Amendments."  *Yorzinski v. Imbert*, 39 F. Supp. 3d 218, 223 (D. Conn. 2014)
(citations omitted).  Although the Complaint is unclear on this point, Mr. Hogan's objection to
the motion to dismiss clarifies that his *Bivens* claim in this case concerns his termination for
making remarks at the August 16, 2012 brief, in violation of his First Amendment rights.

In a federal employment context, the Supreme Court has explicitly held that *Bivens*
damages are not authorized.  *Bush v. Lucas*, 462, U.S. 367, 368 ("Because such claims arise out

of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy.").  On this basis alone, Mr. Hogan's *Bivens* claim must be dismissed.[2]  In addition, "[b]ecause vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676 (2009).  Mr. Hogan has made no allegations that Secretary Mabus was personally involved in terminating Mr. Hogan's employment with the Navy in response to his remarks at the brief.  Thus, Mr. Hogan's *Bivens* claim is dismissed.

## C.    TITLE VII RETALIATION CLAIM

Title VII also makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action."  *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007). Mr. Hogan has not pleaded any facts demonstrating that he participated in a protected activity known to the defendant, and therefore this claim must be dismissed.

Mr. Hogan claims that he was terminated in retaliation for filing a complaint with the Navy Inspector General regarding the hiring process for the police canine handler position. However, he does not allege that he engaged in protected activity.  His own allegations, and the

---

[2] At the June 25, 2015 oral argument on this motion, Plaintiff's counsel conceded that he is aware of no court that has extended *Bivens* liability to cases such as this.

document he references,[3] show instead that, while he did complain about the hiring process for the police canine handler position, he did not complain that he was being discriminated against on account of his sex.  The complaint Mr. Hogan sent to the Navy Inspector General alleged a number of "red flags" that he identified as making him "strongly suspect the selection process for this job was unfairly based upon undue bias or other interference or input."  Doc. No. 12-2, at 3.  He complained that "[t]he job selection process should be fair with applicants provided an equal opportunity to have their qualifications judged based upon merit - not upon any sort of personal knowledge bias."  *Id.*.  He added that "it seems incredulous that the one applicant identified as predestined to get the job did in fact get it."  Nowhere in his complaint to the Navy Inspector General does Mr. Hogan state that he believes he did not receive the job because he is male.

Instead, the gravamen of his complaint to the Navy Inspector General appears to be that the selection process was biased towards a specific individual with whom the selecting officials may have already had personal familiarity.  Such bias does not fall under any proscribed categories of conduct under Title VII.  While a Title VII plaintiff need only show that he had a "good faith, reasonable belief" that the underlying employment practice was unlawful under Title VII, *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996), there is nothing in the Complaint nor in his complaint to the Navy Inspector General indicating that Mr. Hogan believed he was being discriminated against based on his sex.  Therefore, there is no basis to

---

[3] Mr. Hogan references his complaint filed with the Navy Inspector General throughout the Complaint, and therefore this Court may consider it for purposes of ruling on a motion to dismiss.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("[T]he complaint is deemed to include . . . any statements or documents incorporated in it by reference. . . .  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotation marks and citations omitted).

infer that he had a good faith, reasonable belief that he was opposing conduct unlawful under Title VII.

However, even if he were to have had such a good faith, reasonable belief, this claim still would fail because there is no allegation in the Complaint to support an inference that the Navy "understood, or could have reasonably understood, that the plaintiff's complaints, constituting the protected activity, were based on conduct prohibited by Title VII." *Rosioreanu v. City of New York*, 526 F. App'x 118, 120 (2d Cir. 2013) (citing *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)).  There are no allegations in the Complaint, nor statements in Mr. Hogan's complaint to the Navy Inspector General, that indicate that he ever suggested to anyone at the Navy that he was complaining about sex discrimination.  Mr. Hogan could not have a viable Title VII retaliation claim, if his prior complaints never stated that he "viewed [an employer's] actions as based on [his] gender, and there was nothing in [his] protests that could reasonably have led [the employer] to understand that that was the nature of [his] objections." *Galdieri-Ambrosini*, 136 F.3d at 292.[4]

Because Mr. Hogan has not plausibly alleged that he participated in a protected activity known to the defendant, his Title VII retaliation claim is dismissed.

---

[4] *See also Rosioreanu*, 526 F. App'x at 120 ("Put another way, [the plaintiff's] complaints could easily have described a conflict between co-workers of any sex—regardless of the presence or absence of discriminatory animus[.]"); *Dinice-Allen v. Yale-New Haven Hosp.*, No. 3:06-cv-00675, 2008 WL 160206, at *5, 2008 U.S. Dist. LEXIS 1802, at *14 (D. Conn. Jan. 10, 2008) ("To constitute protected activity from which retaliation could be charged, the employee must show the employer knew of the employee's activity, i.e. the specific discrimination.  A general complaint of unfair treatment is not protected activity.") (citations omitted); *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521-22 (S.D.N.Y. 2010) (Plaintiff "need not have explicitly used the words 'discrimination' or 'gender' to afford his complaints protected-activity status.  When the conduct complained of, however, does not lend itself to a reasonable inference of unlawful discrimination, such 'magic words,' may be the only way to put the employer on notice that the employee believes himself to be complaining of discriminatory conduct.") (citations omitted); *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308-09 (S.D.N.Y. 2009) ("The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally. . . .  While plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a protected activity.").

**IV.      CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. No. 12] is GRANTED.

The Clerk is respectfully directed to enter judgment dismissing the complaint and to close the

case.

SO ORDERED at Bridgeport, Connecticut, this 30th day of June, 2015.


  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge